IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

WILLIAM P. WARE, JR., )
)
Plaintiff, )
)
v. ) CIVIL ACTION NO. 3:05cv1148-MEF
)
JO ANNE B. BARNHART, )
Commissioner of Social Security, )
)
Defendant. )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Claimant William P. Ware, Jr. ["Ware"], filed this action seeking a review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) (2000) (Doc. # 1). Upon review of the record and the relevant law, the Magistrate Judge concludes that the Commissioner's decision should be REVERSED and REMANDED for an award of benefits.

## I. PROCEDURAL BACKGROUND AND FACTS

Ware constructively filed an application for Disability Insurance Benefits on 12 February 2003 in which he claimed to have become disabled as of 1 June 2001 due to "chronic back pain" (R. 13, 51). Ware completed the tenth grade and has prior relevant work experience as a janitor and janitorial supervisor (R. 13, 213).

His application was denied initially (R. 19-25), and a hearing before Administrative Law Judge ["ALJ"] Cynthia W. Brown resulted in an unfavorable decision (R. 13-18). The Social Security Administration's Appeals Council denied Ware's request for a review of the

ALJ's opinion, thus rendering the ALJ's opinion the final decision of the Commissioner. Ware then filed this timely lawsuit (Doc. # 1).

## II. STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." ***Miles v. Chater***, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing ***Bloodsworth v. Heckler***, 703 F.2d 1233, 1239 (11th Cir. 1983)). The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," ***Kelley v. Apfel***, 185 F.3d 1211 (11th Cir. 1999) (citing ***Graham v. Apfel***, 129 F.3d 1420, 1422 (11th Cir. 1997)).[1] This is true despite the existence of substantial evidence "contrary to the findings of the ALJ." ***Barron v. Sullivan***, 924 F.2d 227, 230 (11th Cir. 1991). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." ***Miles***, 84 F.3d at 1400 (citations omitted).

---

[1] In ***Graham v. Apfel***, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See* ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

## III. DISCUSSION

### *A. Standard for Determining Disability*

An individual who files an application for Social Security disability benefits must prove that he is disabled, which means that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2000); *see also* 20 C.F.R. §§ 404.1512(a) (2006).

The regulations governing disability determinations provide a five-step sequential evaluation process that the ALJ must follow to determine whether a claimant has proven that he is disabled. *See* 20 C.F.R. §§ 404.1520; *see also* ***Ambers v. Heckler***, 736 F.2d 1467, 1469 (11th Cir. 1984); ***Williams v. Barnhart***, 186 F. Supp. 2d 1192, 1195 (M.D. Ala. 2002). If the claimant is not currently engaged in substantial gainful activity, the ALJ must determine whether he suffers from a severe impairment that has lasted or is expected to last 12 months or more. §§ 404.1509, 404.1520(a)(4)(i)-(ii). If so, and the impairment(s) is of such severity as to meet or medically equal a condition described in the SSA's "Listing of Impairments," then the claimant will be found to be disabled. §§ 404.1520(a)(4)(iii); 404, subpt. P, app. 1.

If the claimant's severe impairment(s) does not automatically qualify him for disability benefits, the ALJ must then assess his residual functional capacity ["RFC"], which represents "the most [a claimant] can still do despite [his] limitations." §§ 404.1545(a). Considering his RFC, the ALJ must determine whether the claimant is able to perform the

physical and mental demands of his past relevant work. §§ 404.1520(a)(4)(iv). If not, the ALJ must determine whether, considering his RFC, age, education, and past work experience, the claimant is capable of performing other jobs available in significant numbers in the national economy. §§ 404.1520(a)(4)(v), 404.1560(c).

***B. Application of the Standard: The ALJ's Findings***

After discussing the records and the relevant law, the ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since June 1, 2001.
>
> 2. The medical evidence establishes that the claimant has degenerative lumbar spondylosis and chronic pancreatitis, impairments which are severe but which do not meet or equal the criteria of any of the impairments listed on Appendix 1, Subpart P, Regulations No. 4.
>
> 3. The claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the degree of medical treatment required and the reports of the treating and examining practitioners.
>
> 4. The claimant's residual functional capacity is limited to lifting up to 20 pounds and the need for a sit/stand work option.
>
> 5. The claimant is unable to perform his past relevant work as a supervisor/janitor.
>
> 6. The claimant's capacity for the full range of light work is diminished by his inability to perform tasks requiring repetitive bending, stooping or squatting.

7. The claimant is found to have no more than mild to moderate back pain assuming he limits his activities to the restricted range of light work.

8. The claimant is 47 years old, which is classified as a "younger individual".

9. The claimant has a tenth grade education.

10. The claimant has skilled work experience.

11. Considering the claimant's age, educational background, work history and residual functional capacity, he is able to make a successful vocational adjustment to work which exists in significant numbers in the national economy. Such work includes employment as a cashier, an assembly worker, inspector/checker or in security work (over 13,500 such jobs in North Central Alabama).

12. The claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of this decision.

(R. 17-18).

Ware disagrees and contends generally that the Commissioner's decision is not supported by substantial evidence in the record. Focusing on evidence of his back condition, Ware contends specifically that the ALJ erred in evaluating his subjective complaints of pain (Doc. # 5-8).

***C. Ware's Subjective Complaints***

On paperwork filed in support of his initial application, Ware stated that he could not "sit, stand, or walk without pain" (R. 63). Consequently, he was limited in his ability to

perform household chores, and was only occasionally able to walk, drive or do yard work for an average of two hours (R. 73). He could stand and sit for only about 30 minutes and walk for only about 15 minutes before he would need to lie down (R. 73).

He stated that he used a back brace, as recommended by his treating physician, Thomas N. Bernard, Jr., M.D. ["Dr. Bernard"] (R. 74). His condition prevented him from bending over to dress or care for himself or perform work around the house (R. 74-75). He noted that he took "muscle relaxants, Vioxx . . . , Aleve, Advil and other" over-the-counter medicines (R. 78).

At his hearing, he complained of pain in his lower back radiating down his leg to his ankle (R. 214), but he testified that he could "comfortably" lift "20, 25 pounds now" (R. 215). He can sit or stand for approximately 30 minutes and walk approximately "two or three blocks" before having to rest for approximately 10-15 minutes (R. 216-17). He also testified that the muscle relaxants he takes make him drowsy to the point that he falls asleep and that they complicate his symptoms associated with his pancreatitis (R. 218). Although the severity of the pain varies, depending upon Ware's level of activity (R. 226), he testified that even minimal movement triggers the pain, and it is "just unbearable" (R. 227).

***D. Standards for Evaluating Subjective Complaints of Pain***

The Commissioner is required to

> consider all of [the claimant's] statements about [his] symptoms, such as pain, an any description [he], [his] treating source or nontreating source, or other persons may provide about how the

> symptoms affect [his] activities of daily living and [his] ability to work. However, statements made about [the claimant's] pain or other symptoms will not alone establish that [he] is disabled; there must be medical signs and laboratory findings which show that [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled. . . . [The Commissioner] will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings and statements about how [the claimant's] symptoms affect [him]. . . . [The Commissioner] will then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his] ability to work.

20 C.F.R. § 404.1529(a)

Notably, "[t]he finding that [a claimant's] impairment(s) could reasonably be expected to produce [his] pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of [the claimant's] symptoms." *Id.* at § 404.1529(b).

Thus, as the Eleventh Circuit Court of Appeals has stated, "§ 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be *considered* *in addition to the medical signs and laboratory findings in deciding the issue of disability.*" ***Foote v. Chater***, 67 F.3d 1553, 1561 (11th Cir. 1995) (emphasis added).

Consequently, only once such an impairment is established must the ALJ *consider* the pain and any functional limitations resulting therefrom as factors weighing on the ultimate decision of disability. ***Foote***, 67 F.3d at 1561. To establish first the existence of such an impairment, however,

> the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See* ***Holt v. Sullivan***, 921 F.2d 1221, 1223 (11th Cir. 1991).

***Wilson v. Barnhart***, 284 F.3d 1219, 1225 (11th Cir. 2002).

Moreover,

> if the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See* ***Hale b. Bowen***, 831 F.2d 1007, 1011 (11th Cir. 1987). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *See* ***Cannon v. Bowen***, 858 F.2d 1541, 1545 (11th Cir. 1988).

*Id.*

### *E. The ALJ's Evaluation of Ware's Subjective Complaints*

The ALJ concluded that

> [t]here has been no objective evidence for the claimant's alleged level of back pain; and, exam reveals that the claimant has maintained overall good muscle tone, which would not be possible if he had to lie down as often as he alleged and if he were as restricted as alleged. Medical records and repeated x-rays and MRI's showed only mild degenerative disc disease. No

> doctor, treating or consulting, ever indicated that the claimant was not capable of some type of gainful activity. . . .
>
> While the medical evidence reveals that the claimant has been diagnosed with underlying conditions, including degenerative lumbar spondylosis and chronic pancreatitis, the objective medical evidence does not support the severity of pain and other subjective symptoms alleged by the claimant. Additionally, none of the claimant's conditions are the severity that reasonably could be expected to give rise to the claimant's alleged pain and other symptoms.

(R. 16).

### *F. Analysis*

While the ALJ's opinion appears at first glance to provide an adequate explanation for concluding that Ware had failed to establish the existence of an impairment that could reasonably give rise to the pain alleged, a closer inspection reveals that she appears to have focused solely on those aspects of the record supporting her conclusion and understated, if not completely ignored, those elements that would have required her to conclude otherwise (R. 15-16). Furthermore, she appears to have based her assessment of Ware's credibility on this erroneous conclusion. Therefore, the Commissioner's decision is due to be reversed for an award of benefits.

As the ALJ noted in her summary of the medical record, on 4 October 2001, Ware's then treating physician, Abayomi G. Oshinowo, M.D. ["Dr. Oshinowo"], restricted Ware from all lifting. This alone serves to establish the existence of a condition that could "*reasonably be expected* to give rise to the claimed pain." ***Wilson***, 284 F.3d at 1225. Further

buttressing the court's conclusion is the ALJ's failure to note that, while the x-ray performed in conjunction with Ware's visit to Dr. Oshinowo revealed only early degenerative disc disease, Dr. Oshinowo also noted that the "mechanism of injury as reported . . . definitely could aggravate/accelerate [Ware's] degenerative disc disease" (R. 88).

On 31 January 2002, another treating physician, Dr. Bernard, reviewed a radiologist's report regarding mechanical resonance imaging ["MRI"] conducted on Ware's lumbar spine, which revealed (1) "broad based disk bulge at L4-5 with a 2 mm central disk protrusion causing moderate degree of bilateral neural foraminal narrowing and thecal sac stenosis. AP dimension of the sac measures 5 mm"; and (2) a "5 mm central disk protrusion at L5-S1 causing mild mass effect upon the anterior aspect of the thecal sac and mild degree of bilateral neural forminal narrowing" (R. 119).

Dr. Bernard concluded that "[i]t is possible that either one of these disk abnormalities or a combination of abnormalities could be responsible for his current pain" (R. 116), which Ware had previously described to Dr. Bernard in a manner consistent with his description at the hearing before the ALJ (R. 15-16). Shortly thereafter, Dr. Bernard suggested that Ware try an epidural steroid injection to relieve the pain (R. 115). Thus, not one but two conditions existed that could at that time reasonably give rise to Ware's alleged pain.[2]

Not only did the ALJ incorrectly note the date of the MRI, but she also somewhat disingenuously described it as having established only "a disc bulge at L4-5 and L5-S1 with

---

[2]Notably, the Commissioner, in defending the ALJ's opinion, apparently adopted her faulty view of the record (Doc. # 12, p. 4, 5).

mild disc narrowing" (R. 14). In addition, the ALJ failed to mention Dr. Bernard's analysis of the MRI, noting only that Ware "was diagnosed with degenerative lumbar spondylosis and possible lumbar discogenic syndrome" (R. 14).

The ALJ's skewed view of the record is further illustrated by the following statement in her opinion:

> The claimant underwent physical therapy from November 26, 2002 to January 30, 2003. Progress notes indicate that the claimant was much improved by the end of the session, with greater range of motion and decreased pain.

(R. 14). The relevant records reveal, however, that Ware's range of motion was tested only once, at his first visit, and the notes concerning the relevant tests indicate that his range was rather limited (R. 98). Thereafter, the lines on the forms used by the therapists to document the results of range of motion tests are blank, and no other notations suggest that these tests were conducted again (R. 91-98).

In addition, the rather cryptic notes simply do not permit the conclusion that Ware's condition was "much improved." On the contrary, he continued to complain of pain through his last visit and consistently stated that, while he generally felt better for a day or two following therapy, his pain generally resumed at its previous levels. *Id.* Consistent with Ware's testimony that his pain varies from day to day depending upon his activities (R. 226), the records document varying limitations in Ware's range of motion with respect to his back (R. 109-18).

Perhaps the most troubling aspect of the ALJ's opinion is her failure to acknowledge,

and thus apparently consider, the opinion of John S. Whitehead, M.D. ["Dr. Whitehead"], who, in evaluating the record for the initial disability determination, stated that Ware's condition "could reasonably be expected to produce some of the above stated symptoms and functional limitations. Claimant's statements about his symptoms and functional limitations are partially credible, *as the severity alleged is consistent with the objective findings from the evidence in file. The Mer* [sic] *in the file does support the level of severity of the above stated symptoms*" (R. 87) (emphasis added).

Although ALJs "are not bound by any findings made by State agency medical . . . consultants, or other program physicians," they "are highly qualified physicians . . . who are also experts in Social Security disability evaluation. Therefore, [ALJs] *must consider [their] findings . . . as opinion evidence*." 20 C.F.R. § 404.1527(f)(2)(i). The ALJ's failure to do so constitutes legal error.[3]

For all of the reasons discussed, the ALJ's conclusion that Ware's complaints of pain were not supported by any objective medical evidence establishing the existence of an impairment that could reasonably give rise to the pain alleged is itself not supported by substantial evidence in the record. Therefore, Ware did satisfy the Court of Appeals's pain standard. Furthermore, the ALJ's credibility determination, which was based in large

[3]The undersigned also notes her concern with the ALJ's conclusion that Ware's statements regarding his symptoms are "not entirely credible" (R. 15). That they are not "entirely" credible implies that they are not entirely incredible either. Yet, the ALJ fails to explain the aspects of Ware's statements that she found credible, or to distinguish among them in a manner which explains her findings of credibility. The Commissioner would be well-advised to avoid relying on such unexplained, fence-sitting conclusions. Findings such as these reflect a red-flag to the court that the ALJ's work-product is more rhetorical than substantive.

measure, if not exclusively, on her seriously flawed and incomplete perception of the record, is inadequately supported and explained.

Although the ALJ did discuss evidence that could serve to discredit Ware, her conclusions are predicated on an obviously deficient view of the record and a resultant erroneous application of the Court of Appeals' standard for evaluating subjective complaints. As the Commissioner vigorously contends (Doc. # 12, pp. 3-9), the ALJ could have, with some effort, provided a *legitimate* and *supported* rationale for finding Ware's complaints less than completely credible; however, the court must review the Commissioner's decision as the ALJ wrote it and not as the Commissioner may now wish the ALJ had written it. *See* ***Shinn*** **ex rel.** ***Shinn v. Comm'r of Soc. Sec.***, 391 F.3d 1276, 1287 (11th Cir. 2004) (declining to rule against the claimant on grounds raised by the Commissioner because they had not been considered by the ALJ in his opinion); ***Owens v. Heckler***, 748 F.2d 1511, 1516 (11th Cir. 1984) (declining to affirm the Commissioner's decision "simply because some rationale might have supported the ALJ's conclusion") (citing ***Sec. & Exch. Comm'n v. Chenery Corp.***, 318 U.S. 80 (1943)).

Having erred in concluding that Ware failed to meet the Court of Appeals' pain standard and, consequently, failed to adequately explain her decision to discredit Ware's statements regarding his symptoms, the Commissioner must accept his statements as true. At Ware's hearing, the vocational expert testified that Ware's complaints, if true, would render him unable to perform the duties of any of the jobs identified by the Commissioner. As the Commissioner concedes, Ware "has alleged disabling levels of chronic back pain"

(Doc. # 12, p. 4). Therefore, further proceedings are not necessary other than those that may be required to process an award of benefits.

## IV. CONCLUSION

Therefore, it is the RECOMMENDATION of the Magistrate Judge that the decision of the Commissioner be REVERSED and REMANDED for an award of benefits. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before 25 September, 2006. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. ***Nettles v. Wainwright***, 677 F.2d 404 (5th Cir. 1982). *See* ***Stein v. Reynolds Securities, Inc.***, 667 F.2d 33 (11th Cir. 1982). *See also* ***Bonner v. City of Prichard***, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on 30

September 1981).

DONE this 12th day of September, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE